beginning with Freeman versus Kirisits. Let me just make sure council is on the line. So, Mr. LeCoultre, do we have you for the appellant? Good morning, Your Honor. Okay, and for the appellees, we have two lawyers, Ms. Etlinger and Mr. Romano. Are you both here? Yes, Laura Etlinger checking in. Yes, Your Honor, good morning. Nick Romano as well. Okay, Ms. Etlinger, I mispronounced your name, but I'm correct to me. So, all right, we're going to do this pretty much like we do it live. The only difference will be that Ms. Rodriguez will function as the yellow light, and she will announce when there's one minute left for the argument. So, view that as kind of a warning to wrap it up. So, Mr. LeCoultre, you have requested two minutes for rebuttal, so that gives you ten minutes now, and then two minutes of Yes, Your Honor. Okay, you may proceed. Good morning, Judge Sullivan, members of the court. First, I'd like to thank the court for the opportunity to represent Mr. Freeman on this appeal. Your Honors, the district court here erred in dismissing Mr. Freeman's claims under the Rehabilitation Act and his two constitutional claims of equal protection and due process, as well as quashing a subpoena for a recording of an arbitration hearing. First, I'd like to Mr. Freeman on this appeal are properly before the court. He filed a notice of appeal, which appeals from the final judgment, as the federal rules of appellate procedure require. He identifies all of the orders appealed from, and there is no prejudice to hear to the all of the issues here being raised. This is similar to this court's decision in Hurlehey, where I guess it's a little different from Mr. LeCoultre. I guess it's a little different from this court's decision in Covaco and Johnson v. Perry, where the circuit had sort of a pretty quick hook, where it said if you identify specific issues and the issues are not among the ones that you later brief, you're out of luck. How would you distinguish those cases? Well, in those cases, there was an intent from the language to limit the issues to the issues identified in their The notice of appeal included language that said that the plaintiff, their appellant, was going to appeal from an order denying the motion for summary judgment, and then he could not bring up issues outside that summary judgment scope. In Covaco, it was also summary judgment, and he identified the ADA Title 7 and ADA claims, and so here what Mr. Freeman did was different. He said, I'm appealing from the final judgment. Here are the decisions, and I will raise these issues, but there's no intent language there that I will only raise these issues, and that is the distinction. Also, because he is pro se, he's given a little bit more leeway, and certainly there was no prejudice here to the defendants or the appellees who were permitted and given a full opportunity to raise these issues, so we think this is more like Hurlehey than it is Johnson and Covaco, and the due process, the constitutional issue, should probably be before this court. Turning to the merits, Mr. Freeman properly pled a rehabilitation act claim. He worked for a covered employer. He was qualified, had been working there for 15 years, and he plausibly alleged a disability, which was an anxiety disorder that limited his ability to think and concentrate, and the ability to think and concentrate was a major life activity. His doctor's note specifically says he has difficulty concentrating. Whether or not Mr. Freeman was also limited in the ability to work doesn't matter. We think a fair inference can be drawn that that he was limited there too, but because he identified this thinking and concentrating, that was sufficient to make out his claim, to make his claim possible. This is Judge Nardini. Can I ask you a somewhat technical question about the parties on appeal? The caption, and this confused me, the caption lists RPC as a defendant appellee, but OMH is not. OMH is just listed as a defendant, but not a defendant appellee, and I don't, so I don't think it was, there was no brief on OMH's behalf. So can you just help clarify the state of the record here? Whether both RPC and OMH are parties to this appeal, or just one? I think they both are, because Mr. Freeman is challenging the dismissal of his Rehabilitation Act claims against both entities. OMH operates RPC, and as you can get into later in our briefs, talk about they were both involved, but they are, but Mr. Freeman is actually challenging both the dismissal, against the dismissal against both parties. Can you explain the status of the caption then? I don't know, I don't quite understand why the caption distinguishes only half of the people, half of the original defendants as appellees. Could you explain that? I mean, maybe this is just some sort of snafu, but I just couldn't figure it out myself. I would, Your Honor, I think it probably is a snafu. Certainly there was no intent to limit the appeal to only claims against RPC, rather than the Office of Mental Health. Turning to the substance of the Rehab Act claims, Your Honors, Mr. Freeman sought a plausible accommodation here. He sought an assignment to a different unit, which he had been placed on before. It was, according to the pleadings, an open position available on alternate units, and he was denied that, and that checks off all the boxes in terms of, in terms of asserting and plausibly asserting a claim under the Rehabilitation Act. Now, where the District Court erred here, is it found that RPC was not involved, but the allegations are that the RPC was, in fact, involved. Mr. Freeman submitted his request for a reasonable accommodation to RPC twice. He repeated that request to various RPC administrators, all of whom told him to work without an accommodation, in effect. Yes, it's true that the Office of Mental Health was involved. The Office of Mental Health was asked to decide the RPC was not also involved, and we are not aware of any case, nor have the defendants cited any case where a federally funded employer can defend itself against the failure to reasonably accommodate, simply by saying it had offloaded that decision-making process to a sister entity. Ultimately, it's the federally funded employer's obligation to accommodate, and that's RPC. Now, the District Judge also erred in finding that there was no showing of discriminatory intent. Discriminatory intent is not required for a reasonable accommodation. All that's required is an allegation, and ultimately a finding, that a reasonable accommodation was requested, and that it was denied, and that there's no showing by the employer of undue hardship. And so, here, the request... This is Judge Park. Could I ask a question about the denial of the RPC? It was denied, and I'm wondering if you could explain how that came about. My understanding was that there was an inability to schedule a meeting. Some certain documents describing his ability and ability to work were never provided, so I'm not sure that this counts as a denial. Well, Your Honor, this court's precedents have held that not allowing a reasonable request to linger for an extended period of time is a denial, and in this case, Mr. Freeman did submit his request on two days in January of 2015, and he renewed the request with documentation in February of 2015. That request was not granted, and he was then suspended as a result of that request not being granted. So, that is a denial. Not granted is different from denial, right? I thought not granted was an account of the inability to schedule a meeting. Well, no. Well, Your Honor, from January through August, the request was never processed. There was never a denial. At this point, the not making a decision is effectively a denial, especially where here, Mr. Freeman was suspended and ultimately fired because of that. And so, the not granting is effectively a denial, and as this court's decisions in both Borkowski show, that where the employer doesn't grant the accommodation, causing the person to lose him, that is a violation. In that case, Borkowski was a rehab act claim, Parker was an ADA claim, but the statutes are concurrent here, and that was effectively a denial. The failure to grant the request that allows the person to keep the job is a violation. Judge Nardini, can I follow up on that? Particularly on this notion that there was a request made to, I think this is Udell, who works for, what, OMH? Yes, Your Honor. Is that right? Correct me if I'm wrong, but I thought that attached to the complaint were some emails in which Udell spells out this vacation schedule, scheduling issue, right? Did the plaintiff contest that and allege that there was not, in fact, a vacation schedule or scheduling issue? That that was somehow a a pretext, or is the plaintiff's complaint read only to say that even if you accept that as true, that Udell was, you know, telling the truth, there's still a violation? Can you just clarify what the plaintiff believes its allegations, his allegations support? Yes, so Mr. Freeman's allegations are... that even if that was true, that there was vacation schedule, RPC still had to properly and primely consider his request for an accommodation. It couldn't punish him because it had not yet gotten to that accommodation request, and that vacation schedule email, those emails are well after Mr. Freeman asked for the accommodation. He first asked for the accommodation a few months later, and he does also contest that he did not submit the proper documentation, but in any event, Your Honor, if this is a question of whether or not who caused the breakdown in this interactive process and whose fault it was, that's not a decision properly made here on the pleading. That's more properly decided on the motion for summary judgments or by a fact finder. In other words, there is competing evidence here on why this was not granted and whose fault it is, and therefore the Rehabilitation Act claim should not have been dismissed. Your Honor, unless there are any other questions, I will yield the rest of my time rather than going into some of the other issues that are fully briefed in our briefs. Okay. Thank you, Mr. Lukul. Any other questions from Judges Nardini or Park? No. Thank you. Thank you. Okay. We'll now hear from Ms. Etlinger. Good morning, Your Honors. May it please the Court, Laura Etlinger for the State Appellees. I'd like to start with the Rehabilitation Act claim, and we set forth in our brief why a plaintiff did not adequately allege that he is impaired within the meaning of a disability claim. The clear allegation in his complaint is that he could not work on a specific unit at this employer, and this is clear from the therapist's note that is referenced in and attached to the complaint, and therefore made part of the pleading. His therapist says, as a result of working with geriatric inpatients, whom he claimed he worked with on this particular unit, Mr. Freeman reports disruptive symptoms, overall increase in tension, headaches, difficulty concentrating, episodes of confusion, and difficulties with decision-making. While not working with this geriatric population, he is stable, calmer, more tolerant and effective, and more able to fulfill his work responsibilities. We think this makes it very clear that what he was alleging was that he suffers from an anxiety disorder that is exacerbated when he works on this one particular unit. The description in his therapist's letter contradicts any claim that he generally has an impairment with respect to thinking and concentration. He didn't allege that in his complaint, and it is contradicted by what is in this therapist's note. The therapist's note clearly indicates that he is claiming a disability in the inability to work on one particular unit, and I would draw the court's attention to the case of Wolfie Strada, a very recent decision from this court, and the court there held an impairment does not rise to the level of a disability if it only impairs the employee's ability to perform his or her current job. Plaintiffs must allege that he was instead unable to perform a class or broad range of jobs, so we would encourage the court to affirm dismissal of the Rehabilitation Act claims on the basis of a failure to allege a disability. This is Judge Park. Was this argued below? I thought Mr. Freeman said that you didn't challenge the district court's finding that he was regarded as disabled. No, we raised this, that's incorrect, we raised this in our original motion to dismiss. That was the basis on which we sought dismissal of the Rehabilitation Act claim against the This is at the special appendix pages 13 and 14, but the district court erred in doing so because the district court found that plaintiffs plausibly alleged he was regarded as having a disability, but the regarded as standard for showing a disability does not apply to failure to accommodate claims. This makes sense because in order to be afforded entitled to an accommodation, you must actually be disabled, and this is clear. I'd like to give the court a citation because we cited the regulations in our brief, but in fact the statute at 42 USC section 12201H says very clearly that the regarded as prong of the disability definition does not apply to accommodation claims, and we did raise that in our brief, so there's been no waiver or failure to preserve here. With respect to the merits of the claim, I would draw the court's attention to appendix page 837 where plaintiff admits in a letter that he did not provide the updated medical documentation that Ms. Udell had requested, and the fact that he was out on leave for most of the period in which his accommodation request was pending was simply the reason the accommodation request was not acted upon, and he's never alleged that there was any other reason that it was not acted upon other than he was out on leave and he believed and he thought he had been told that it couldn't be acted upon while he was out on leave. Well there, Mr. Judge Karpukian, I think his response is that he asked for a meeting and when he returned he wasn't given the meeting, he was told to report, and when he didn't he was fired. Right, but isn't that a denial in effect? Well he wasn't given the meeting because Ms. Udell had said I can't act on your claim until you give me updated documentation. By this time it was the summer and his therapist notes were from I believe February and March, so she said we don't know if you're still suffering from what you claim is an impairment and we need updated medical documentation, and Mr. Freeman says to her later I did not return the request for the new medical form because I was under the impression that the interactive process could not continue until I was at work. So he wasn't, he didn't provide the documentation that was needed for Ms. Udell to act on his request before he returned to work. I'd like to, I'd like to turn to the due process claims. The court should affirm dismissal of these claims on the basis of qualified immunity. It's entirely appropriate for the court to reach fully addressed by the parties and raises a question of law, whether there was clear legal law holding that the procedures provided here were inadequate. This court has reached the issue unjustly circumstances, for example in McGowan v. United States at 825 F3RD 118, in Colvin v. Keene at 900 F3RD 63. Dismissals of the claims should be affirmed on the basis of qualified immunity because as to each due process claim there was no clearly established law that would have alerted defendants that the procedures they followed, which were provided for in the collective bargaining agreement, were unconstitutional. With respect to the pre-suspension process claim, there's no case law that plaintiff points to, and we're not aware of any from the Supreme Court or this court, holding that a pre-suspension hearing is required where, as here, the plaintiff was provided with an informal notice and an informal opportunity to tell his side of the story. These were at the interrogation meetings. The suspension requires a probable cause finding and the probable cause determination can be challenged in a arbitration hearing, which if plaintiff is successful in challenging the probable cause determination, he obtains an award of back pay. In fact, the cases we've cited in our brief certainly would have allowed a reasonable official to believe that these procedural protections satisfied due process standards. In a case that plaintiff relies on in his reply brief, O'Connor v. Pearson, the court said CBA-mandated grievance procedures are routinely, although not always, held to provide adequate post-deprivation process. And in a number of cases, this court has upheld the provision of an informal opportunity for notice and an opportunity to be heard in connection with unpaid leave before an employee has the opportunity to try to return to work. We've cited the strong decision and also those are the facts in O'Connor v. Pearson. This is Judge Nardini. Just before your time runs out, can I ask you the same question I asked opposing counsel? Can you clarify the state of the case? We do consider, the reason they're listed as defendants, I believe, and not appellees is because the final amended complaint that was filed here added them and that complaint was dismissed. So, it seems that the court or the clerk's office considered these additional defendants whom plaintiff sought to add in his final complaint were never properly added because that complaint was dismissed. That's very helpful. Thank you. With respect to the other two aspects of the due process claim, we think it's very clear there was no controlling law. A settlement meeting is not improper and the delayed grounds either that there is simply no allegation of personal involvement by any of the defendants in the scheduling of the hearing and in any event there is no clearly established law holding that a five-month delay where someone has been suspended on the basis of a probable cause finding is a due process violation. And on the last claim, the gender-based equal protection claim, the claims that there was discrimination in the basis of a reasonable accommodation request. In that case, we need to know whether the comparator was disciplined for anything in relation to her accommodation request, what her accommodation request was. Without those allegations, and plaintiff has never sought to amend the complaint to add any such allegations, they're simply not formally situated in all material respects. All right. Any other questions for Ms. Etlinger? All right. Thank you, Ms. Etlinger. We'll now hear from Mr. Romano for two minutes. Good morning, your honors, and may it please the court. My name is Nicholas Romano from Connors LLP in Buffalo, New York, and we have the honor of representing Professor Lise G. Glerner, the respondent appellee in this matter. Although this issue is important, I understand that it's a minor issue in the big scheme of this case, and this issue wasn't even addressed by Mr. LeCuel during his oral argument, so I will be brief, but of course I welcome all questions, and I suspect Mr. LeCuel may get into these issues on rebuttal. Over the last four years since the arbitration in February 2016, Mr. Glerner overturned her opinion and award and subpoenaed her personal notes and materials, all because he lost an arbitration she oversaw against Rochester Psychiatric Center. After the last four years of litigation, there's only one issue left before this court. Whether the district court abused discretion in granting Professor Glerner's motion to quash Mr. Freeman's non-party subpoena for Professor Glerner's personal audio recording of the arbitration, which one was an extension of her notes, and two she promised the parties would remain confidential. We asked this court to affirm the district court's decision to quash the subpoena. As a threshold matter, this court need not even address this discovery issue if the court affirms the district court's decision to dismiss the case. If, however, this court does not affirm, it needs to look no further than the case Austern v. Chicago Board Options Exchange, Inc. that this court issued in 1990. In that case, this court talked about arbitral immunity, and there's a quote that speaks to this issue specifically. Arbitrators cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit, and that makes sense, Your Honors. Like you, Your Honors, judges, and like a jury, once an arbitrator issues an award, her role is complete. She shall not be questioned about how or why she reached a specific result unless in specific extreme circumstances. That's because arbitration is an alternative to litigation, not a precursor. To allow a party to subpoena an arbitrator's personal materials, including her personal notes and her personal audio recording, violates Austern dragging arbitrators into lawsuits. It also has a chilling effect on those wanting to serve as arbitrators and will also prevent arbitrators from keeping adequate notes and making sure that their decision is accurate for the record. Therefore, allowing this subpoena to be served on an arbitrator and not affirming the district court's decision would be dangerous precedent for ADR and slippery slope. We ask this court to affirm the district court's decision based on arbitral immunity. Thank you. All right, thank you. Let me just ask my colleagues if there are any questions for Thank you, Mr. Romano. We'll now hear from Mr. LeCoultre for two minutes of rebuttal. Thank you, Your Honor. Turning first to the question of what the court decided on the Rehabilitation Act claim, the court never reached the issue of whether Mr. Freeman was actually disabled, instead deciding that he was perceived to be disabled or considered disabled. So the court never reached that issue, and to the extent this court has some questions, it could necessarily kick that back to the district court to make that decision. Regarding qualified immunity, that too was not reached by the district court. It was briefed but not reached by the district court, and this court's practice has been to remand back to the district court to make that decision in the first instance. But if we turn to the merits of the defendant's claim, it's clear that the landscape was well settled in this court's two decisions in O'Connor 2005 and Spinelli 2009, that when the government takes away somebody's opportunity to earn a living, it must provide some sort of process, because that is a strong interest and it could be financially devastating. The Third Circuit in 2011 then reiterated that. You have one more minute. Thank you. Reiterated that principle. So the landscape was well settled that some pre-deprivation process is due before taking away somebody's ability to earn a living or putting them on unpaid leave, which is what happened in O'Connor. Secondly, that to the extent even if pre-deprivation process is not required, there must be a prompt and meaningful post-deprivation process, and that was again Spinelli. 58 days without the opportunity to have a license to sell granted some re-judgment for Ms. Spinelli. Finally, turning to the issue of the subpoena, Ms. Galertner, arbitrator Galertner, is not a defendant. Mr. Freeman is no longer raising any claims. He simply wants what is effectively a transcript of the proceedings, an audio recording of the proceedings. He's not taking her notes. He's not taking her thought processes. She was a non-party subject to a subpoena at that point, and there was no confidentiality interest here. Ms. arbitrator Galertner does not have a confidentiality interest in not disclosing the public or the known parts of a proceeding to another party. Her confidentiality interests are in not disclosing it to the world, but not to yield the rest of my time. Any questions? No. All right. Thanks. Okay. Thank you all. We will reserve decision. Well argued.